(114 So. 409)
**JOHNSTON v. GUICE.** (4 Div. 342.)

Supreme Court of Alabama. Nov. 10, 1927.

**1. Contracts ☜245(2) — Prior parol understanding as to sale of land held merged in written agreement by correspondence.**

Prior parol understanding between landowner and real estate agent as to sale of property was merged in written agreement expressed in correspondence between them.

**2. Contracts ☜176(6)—Construction of correspondence embodying contract between landowner and real estate agent held for court.**

In real estate agent's action for commission, construction of contract between landowner and plaintiff expressed in correspondence between parties was for court and not for jury.

**3. Brokers ☜54—Under owner's agreement to give agent amount obtained over certain price for land, commission becomes due on production of purchaser ready, able, and willing to buy on stated terms.**

On landowner's agreement to pay real estate agent all over certain amount obtained for land, commission becomes due on production of purchaser ready, able, and willing to buy on terms stated.

**4. Brokers ☜50—Generally, real estate agent must produce purchaser while agency is in force to be entitled to commission.**

As a rule, real estate agent, to be entitled to commission, must produce purchaser ready, able, and willing to buy on terms stated while agency is in force.

**5. Brokers ⬤=86(3) — Letter stating agent could probably sell property and asking for option held not evidence of sale, entitling him to commission.**

Where landowner agreed to pay real estate agent all he obtained over certain price for land, agent's letters, stating that he could probably sell property, and asking for option, *held* not evidence of concluded sale entitling him to commissions.

**6. Vendor and purchaser ⬤=18(4)—Valid option on present consideration for stipulated time is irrevocable.**

Valid option on land on present consideration for stipulated time is irrevocable.

**7. Brokers ⬤=39—Real estate agent's request of owner for option held not to affect parties' status under agency agreement.**

Where landowner had agreed to pay real estate agent all over certain amount obtained for land, agent's subsequent request for 30-day option thereon did not affect status of parties under agency agreement.

**8. Brokers ⬤=44—Letter to real estate agent, stating landowner did not wish to sell, and returning money sent for option, held revocation of agency.**

Where, after landowner had agreed to pay real estate agent all over certain amount for land, she wrote to him that she did not wish to dispose of property, and returned money which he had sent to pay for 30-day option thereon, agency to sell was in effect revoked.

**9. Brokers ⬤=44—Owner, acting in good faith, held entitled to revoke agency to sell land at any time before receiving notice of agent's finding purchaser.**

Where owner agreed to pay real estate agent all over certain price obtained for land, she was free to revoke agency at any time before receiving advice of agent's finding purchaser on terms required.

**10. Brokers ⬤=46 — In absence of exclusive agency, landowner may negotiate sales to other than agent's customers.**

In absence of exclusive agency, landowner may negotiate sales himself with others than broker's customers while agency is still pending.

**11. Brokers ⬤=45—Real estate agent's letter, stating owner could do her own selling, held abandonment of agency.**

Real estate agent's letter to owner in reply to owner's letter to him returning money which he sent for option on land, stating that owner's offer could not be depended on, and that owner could do her own selling and collecting of rents as far as agent was concerned, abandoned contract, and severed relation of agency.

**12. Brokers ⬤=45 — Correspondence between landowner and real estate agent subsequent to broker's severing relation of agency held not to reinstate such relation.**

Where real estate agent, employed by landowner to sell land, in effect by letter severed contract of agency, subsequent letter by landowner explaining why she refused to grant him option on land for money which he sent, and subsequent correspondence concerning price which agent could obtain for land, part of which included threat by agent to sue for commission and levy attachment on land, *held* not to constitute reinstatement of agency.

**13. Brokers ⬤=45—Landowner, not advised of consummated agreement with purchaser at agent's severance of agency contract, held not liable for commission.**

Where landowner agreed to pay agent all obtained over certain amount for land, and was not advised when agent severed contract of agency of any consummated agreement with purchaser, nor was name of purchaser nor price nor profit agent was making disclosed until after attachment on land by agent was served, landowner was not liable for commission on theory that agent had found purchaser ready, able, and willing to buy on terms stated, and defendant landowner was entitled to affirmative charge as requested.

**14. Brokers ⬤=19—Obligations of good faith between landowner and real estate agent held mutual.**

As between landowner and real estate agent, obligations of good faith are mutual.

**15. Brokers ⬤=88(3)—In real estate agent's action for commission, evidence that he had not informed owner of procuring purchaser before abandoning contract held to entitle defendant to affirmative charge.**

In action by real estate agent against landowner for commission, evidence that plaintiff had not informed defendant of having obtained purchaser ready, able, and willing to buy on terms stated before agent severed relations of agency *held* to entitle defendant to affirmative charge.

Appeal from Circuit Court, Barbour County; J. S. Williams, Judge.

Action by I. F. Guice against Carrie E. Johnston. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under Code 1923, § 7326. Reversed and remanded.

The facts are stated by the court.

McDowell & McDowell, of Eufaula, for appellant.

Counsel discuss the questions raised, citing Henderson v. Vincent, 84 Ala. 101, 4 So. 180; Pratt v. Patterson, 112 Pa. 475, 3 A. 858; 23 A. & E. Ency. Law (2d Ed.) 921.

Chauncey Sparks, of Eufaula, for appellee.

There was a valid contract shown, and appellee was entitled to his commissions. Alford v. Creagh, 7 Ala. App. 358, 62 So. 254.

### Statement.

The plaintiff, I. F. Guice, sued the defendant, Carrie E. Johnston, upon the common counts and a special account as follows:

⬤=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The plaintiff claims of the defendant the sum of $100.00 as damages that heretofore, on or about, to wit, the 19th day of October, 1925, the defendant, the said Carrie E. Johnston, employed the plaintiff who is a real estate dealer in the city of Eufaula, Alabama, to sell certain property for the said Carrie E. Johnston at and for the net price of $250.00, the said plaintiff to secure his commission over and above the net price, and plaintiff avers that he sold said property at and for the sum of $350.00 to a party who was able, willing and ready to purchase and pay for the same, but the defendant declined and refused to. convey said property in accordance with the contract with the plaintiff. Hence this suit."

The defendant pleaded the general issue. There was verdict and judgment for plaintiff.

The defendant, a resident of Massachusetts, placed her house and lot in Eufaula, Ala., in the hands of plaintiff, a real estate agent in Eufaula, to rent and to find a purchaser. Plaintiff rented the property, collected and remitted the rents, less commissions, from 1922 to the autumn of 1925. The price named for the property in 1922 was $200, exclusive of commissions. Thus far it appears the dealings of the parties was by parol.

The further transactions were wholly by correspondence, the pertinent parts of which are here set out:

Defendant to plaintiff, October 19, 1925:

"I received money order with letter also you said you think you could sell the place for $200.00 without commission. I will take no less than $250.00 without your commission. So you can get what you can just so I get $250."

Plaintiff to defendant, October 29th:

"I can probably sell your property on Van Buren street to net you $250.00 but before the buyer accepts your deed to it, he will require you to show how you acquired it."

This letter called for certain assurances of title, and concluded:

"As soon as I receive this from you, I will probably forward you the deed for signature."

On November 8th defendant referred plaintiff to the record of her deed.

Plaintiff to defendant, November 10th:

"I found the deed from Carrie Ellis to you as you state, and this makes it all right. Glad you called my attention to it. I herewith send you $5.00 for an option on this property for 30 days. I will have to have a few days on this but I think it will be all right in the next few days and if you will sign the inclosed option and return to me promptly I will let you know positively within a short time."

Defendant, by her husband, to plaintiff, November 17th:

"In the matter concerning the property, I wish to inform you that at the present time I do not wish to dispose of it. Things have been running smoothly with me in Springfield and I feel that I would like to keep the property. I am returning the five dollars ($5.00) you sent, in the form of a money order."

Plaintiff to defendant, November 20th:

"I am in receipt of a letter of the 17th inst. from S. B. W. Johnston returning the $5.00 sent you for the option for 30 days on your property in Eufaula. In your letter of the 19th of October you stated in your letter that if I would net you $250.00 for it, it would be all right and I simply sent you the $5.00 to bind it for 30 days at your own offer. If your own offer cannot be depended on any more than this, it will be useless for me to have anything to do with it as I would not know whether it was sold or not no matter what price it was sold so you can do your own selling and collecting of rents so far as I am concerned."

Defendant to plaintiff, December 2d:

"I received your letter dated Nov. 20th and you stated you could not depend on me about selling the property. It is just like this. I don't want to give it away and I have two different ones wants the place and so I wrote them but they have not replied as yet and I would not except the $5.00 on them terms as you wrote."

Plaintiff to defendant, December 7th:

"Ever since this property became yours you have had it listed with me for sale and I have not failed to offer it for sale ever since at different times when I thought there was the least prospect of a sale. I have before me now your letter of Oct. 19th in which you say 'I will take no less than $250 without your commission just so I get $250.' I have a purchaser for this property who is ready, willing and able to pay enough more than the price you state you are willing to sell in your letter of the 19th of Oct. to pay me for my trouble and as soon as I have found you a buyer at your own price, you are willing and ready to sell it yourself out from under me after listing it with me for sale. If you think that you can do me any such way as this, you are very badly mistaken and the property is good for my commission for all I have sold it above $250 and unless I receive yours telling me to forward deed to you for execution within the next few days, I propose to levy an attachment on this property for my commission above $250 and before any one can get a title to it, the attachment will have to be paid. If you prefer coming to Eufaula to defend a suit which I intend filing against you for my commission, rather than execute a deed to my purchaser when I have sold it to him to give you what you proposed to sell it for, all right."

Defendant to plaintiff, December 10th:

"I want to know at once do you mean that $250.00 will be clear to cash and not include lawyer fee, taxes, and commission? So let me know at once, that I won't have to pay them out $250.00."

Plaintiff to defendant, December 14th:

"I can and will draw the deed and not charge you anything for drawing it and I will get my commission above $250.00 but the taxes will have to be paid out of the $250. * * * Please

advise me by return mail if this will be satisfactory and if it will, I will forward deed for your signature. Otherwise I will take other steps in the matter which I would prefer not doing if it can be avoided:"

Receiving no reply, plaintiff sued out attachment January 2, 1926. Plaintiff's evidence further tended to show that he had found a purchaser, Lawson Griffin, ready, able, and willing to buy the property at $350; that such agreement had been reached before the letter of November 20th, above, was written.

BOULDIN, J. [1] The prior parol understanding looking to a sale of the property was merged into the written agreement expressed in correspondence.

[2] The contractual rights of the parties are to be found in the writings; their construction was for the court and not the jury.

[3, 4] By the letter of October 19th, the defendant constituted the plaintiff, her agent, to sell the property on the terms therein stated. Under such appointment, the condition upon which commissions become due is the production of a purchaser, ready, able, and willing to buy upon the terms stated. As a rule, this must be done while the agency is in force.

[5] The letter of October 29th, advising that plaintiff could probably sell the property, and that of November 10th, asking for a 30-day option, are not evidence of a concluded sale, entitling plaintiff to commissions.

[6, 7] A valid option upon a present consideration for a stipulated time is irrevocable. It is a frequent method employed by real estate brokers to effect sales to customers, carrying to the purchaser the rights of an assignee or appointee of the broker under the option. Clearly there was no obligation on defendant to give the option; neither did request therefor affect the status of the parties under the agency agreement.

[8] The letter of November 17th was in effect a revocation of the agency to sell.

[9] Subject to certain conditions of good faith, the owner is free to revoke the agency here involved at any time before a purchaser is produced, before receiving advice of compliance with the conditions on which commissions accrue to the agent. Chambers v. Seay, 73 Ala. 372; Henderson v. Vincent, 84 Ala. 100, 4 So. 180; Cronin v. American Securities Co., 163 Ala. 533, 50 So. 915, 136 Am. St. Rep. 88; Millican v. Haynes, 212 Ala. 537, 103 So. 564.

[10] No question of a fraudulent or colorable revocation with intent to sidestep the broker and take advantage of his services by selling to a purchaser enlisted by him appears in this record. In the absence of exclusive agency, the owner is free to negotiate sales himself to other than the broker's cus-

tomers, while the agency is still pending. But no sale was effected to any one. Handley v. Shaffer, 177 Ala. 636, 59 So. 286; Alexander v. Smith, 180 Ala. 541, 61 So. 68.

[11, 12] Apart from the right of revocation at that stage, the plaintiff by his letter of November 20th abandoned the contract and severed the relation of agency. Subsequent correspondence never reinstated such relation. Jackson v. Parrish, 157 Ala. 584, 47 So. 1014; Cooper v. Cooper, 206 Ala. 519, 91 So. 82.

[13] At that time defendant had not been advised of any consummated agreement with a purchaser. The name of the purchaser was never disclosed, nor was the price or profit plaintiff was making on the deal disclosed until the date attachment was served.

[14] We deem it unnecessary to deal with the question presented in appellant's brief to the effect that plaintiff occupied a confidential or fiduciary relation which imposed upon him the duty to obtain the best price obtainable for the property, giving the owner the benefit of same, less reasonable commissions; or the duty to disclose to his principal the facts as to the price he was obtaining for the property. Suffice to say, the obligations of good faith are mutual in such matters. Eastburn v. Espalla, 215 Ala. 650, 112 So. 232.

[15] To conclude, the evidence does not make out a case for recovery, and the defendant was entitled to the affirmative charge as requested.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.