6 So.2d 887

**ASBURY et al. v. COCHRAN.**

**8 Div. 181.**

Supreme Court of Alabama.

June 18, 1942.

Rehearing Denied Oct. 8, 1942.

Carmichael & Polk, of Sheffield, for appellants.

282

Mitchell & Poellnitz, of Florence, for appellee.

FOSTER, Justice.

This is a suit in equity by appellee for the specific performance of an option to purchase a lot in Sheffield contained in a lease contract dated September 26, 1938, executed by appellants, and extending for a year or longer as expressly stipulated. By its terms appellants had the right to terminate the lease if they had a bona fide offer of sale, and in that event agreed to give appellee a thirty-day option to buy the lot for $1,200 cash. And appellee was also given an option to purchase the property for the same consideration at any time before they should receive an offer to purchase by another.

On January 26, 1939, appellants gave appellee written notice of their election to terminate the contract with demand for possession on the ground that the premises are not used for the purpose for which they were rented, and for fraud, and because they "have a sale for the property."

On January 27th, appellee's attorney wrote them that he desired to exercise his option to purchase, and called upon them for an abstract and warranty deed, and that upon presentation of same he was ready to pay the $1,200.

On February 13, 1939, appellee again notified appellants of his election to purchase according to the terms of the option right and tendered $1,200 in payment but notified them that "in event you do not have your abstract of title and deed prepared in favor of Mr. Cochran (appellee) this money will be held available for delivery to you upon the presentation of said deed and abstract to either said Homer L. Cochran or his attorney, Charles A. Poellnitz, Jr." The tender was declined and this suit followed.

The bill, however, makes an unconditional offer to exercise the option and to pay the $1,200 and in all respects to do equity.

■ Appellee had no right to attach to his offer to pay in exercise of his option the requirement that appellants furnish an abstract of title and warranty deed. No such stipulation is contained in the contract. Baker v. Howison, 213 Ala. 41, 104 So. 239, 52 A.L.R. 1452, note page 1462.

■ An option holder cannot enforce it until he elects to and binds himself to perform it thereby transforming it into a mutual contract to sell and to buy, where-

as before such election it was unilateral. A proper notice of such election is usually sufficient to that end declaring such an election and thereby becoming obligated to purchase. Fuller v. Totten, 222 Ala. 174, 131 So. 435.

■ The acceptance to be effectual must be identical with the offer and unconditional. Stephenson Brick Co. v. Bessemer Engineering & Const. Co., 218 Ala. 325, 118 So. 570; 25 R.C.L. 237, section 37. The acceptance of the option and election to purchase given before the bill was filed imposed conditions not required by the contract, and was insufficient.

It has been settled in this State that an offer to perform by a purchaser of land and a tender of a deed to the seller is not a condition to filing a bill for specific performance when there is a binding contract to sell and to purchase. Mitchell v. Walker, 235 Ala. 458, 179 So. 633; Zirkle v. Ball, 171 Ala. 568, 54 So. 1000; Ashurst v. Peck, 101 Ala. 499, 14 So. 541. But it is necessary as a condition to a suit at law for a breach. Baker v. Howison, supra; Smith v. Sherman, 174 Ala. 531, 56 So. 956.

■ But while an election to accept and exercise the option is necessary so as to bind the holder of it, and so as to make it mutually binding, the act of filing a bill declaring such acceptance and election is sufficient, since he thereby places himself under all the obligations of the contract. Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818; 25 R.C.L. 236, notes 18 and 19; Fuller v. Totten, supra.

■ There is no reason insofar as those questions are concerned why the decree granting relief is not well supported.

Appellants also set up fraud and mistake in the execution of the contract and that other matters were agreed on which are not in the contract. But the evidence does not measure up to the requirements of law in that respect. These contentions need no discussion.

An amendment to the bill sets up the fact that on February 28, 1938, which was prior to the date of the lease and option contract, appellants executed a deed to the Alabama Bridge Commission conveying a right of way easement over a portion of the lot in question, and prays for credit on the purchase price of the lot of a proper amount on account of the incumbrance thus created. Appellants claim that they told appellee about this before the lease contract was executed. Appellee testified that he knew the right of way would probably go across, but not that they had surveyed it.

The contract did not provide for a warranty deed, but the owners agreed to sell the lot for the sum of $1,200, and appellee was to assume all paving assessments in addition to the price named. No reference was made to an easement which had been granted. Appellants were paid $90 for it, all prior to the lease and option contract, and the court credited that amount on the purchase price and ordered specific performance upon the payment of $1,110. Appellants question the correctness of this feature of the decree.

■ The general rule is that in the absence of stipulations to the contrary, every contract for the sale of real estate implies that a good title will be made. Kirkland v. O'Kelly, 218 Ala. 68, 117 So. 420; Baker v. Howison, supra.

This applies to an executory contract for the purchase and sale of real estate and is given by law, and exists until the contract has been performed by the execution of a deed. When that is done the purchaser must rely on the warranty in his deed; and if there is none, the rule of caveat emptor applies. Cullum v. Branch Bank, 4 Ala. 21, 37 Am.Dec. 725; 27 R.C.L. 480, 481, section 196. It was said in Hunter v. O'Neil, 12 Ala. 37, that the "right of the purchaser to a good title is a right not growing out of the agreement of the parties, but is given by law—that courts of equity govern their proceedings by this just rule, and when an incumbrance is discovered before the execution of the conveyance, the vendor must discharge it, whether he has or has not agreed to covenant against incumbrances."

The original bill was filed February 24, 1939. The amendment was filed December 5, 1941. We think the evidence is sufficient to impute notice to him of the existence of this outstanding easement when he received his contract from appellants. He tendered the full amount of $1,200, making no claim of credit on account of this easement, and seemed willing at all times to pay the full amount until this amendment was filed. And though he alleges in it that he had no notice of the easement, he does not state when or how he acquired notice.

Since we think the evidence shows notice to him of this easement, at the time he made the contract, the question of the effect of such notice on his rights is now to be considered.

In 27 R.C.L. 481, it is said: "And it is held immaterial that the purchaser at the time of making the contract had knowledge of the existence of an incumbrance on the land," citing Sibley v. Spring, 12 Me. 460, 28 Am.Dec. 191. That case was referring to a mortgage on the land, observing that the mortgage was payable before the purchaser would have been entitled to a deed, and the court presumed that the vendor owing the mortgage debt intended to pay it before the time to make a deed to his purchaser. So that the requirement created by law that the vendor shall convey a good title was not under those circumstances affected by the knowledge by the purchaser of a mortgage on the land falling due before the time should come for the contract to be performed.

But that principle by its reasoning should not apply to the existence of an easement where there was no power or obligation of the vendor to remove it, because it was not subject to removal and discharge. If the purchaser knew of its existence, he also knew that his purchase was necessarily subject to that easement and that the vendor could not remove it. Did he then agree to pay an amount equal to what he considered the value of the lot subject to the easement, or knowing of the easement and that it could not be removed, did he intend to pay for the lot as though it were not subject to the easement with the expectation of crediting the amount agreed on as the purchase price with the value of the easement? His subsequent attitude in respect to the matter evidenced by a repeated tender of the $1,200, without claiming a reduction on account of the existence of this permanent easement, shows what he thought he would get for his $1,200. The law will not raise up a duty contrary to the evident understanding of the parties as to their contract.

■■ We think the decree of the court should be modified so as to require the payment of $1,200 instead of $1,110, and that interest at six per cent. per annum should be added, because the tender was not kept good by paying it into court. The interest should be computed from February 24, 1939, when the bill was filed. The contract provides that under such circumstances, there is to be no refund on account of the rent paid in advance for the year.

Let the decree be modified so as to fix the amount necessary to be paid for a specific performance at $1,200 and interest from February 24, 1939, at six per cent. per annum; and appellee is taxed with the costs of appeal.

Modified and affirmed.

All the Justices concur, except KNIGHT, J., not sitting.

On Rehearing.

FOSTER, Justice.

■ Under section 2 of the contract, appellant as the first party had the right to terminate the lease upon thirty days' notice. Under section 4 this right was not to be exercised unless "they have a bona fide offer of sale." In that event appellee was to have an option of thirty days after such notice to buy the property. The option was irrevocable except as expressed in it. Ross v. Parks, 93 Ala. 153, 8 So. 368, 11 L.R.A. 148, 30 Am.St.Rep. 47; Johnston v. Guice, 217 Ala. 27(6), 114 So. 409.

We do not find that the statement in the notice by appellant of January 26, 1939, that "we have a sale for the property," is supported by proof that they had a bona offer of sale as set forth in the contract. That is the only condition on which appellant can terminate the lease and option as expressed in it. But assuming that the condition on which the right to terminate as expressed in paragraph number 4 had occurred on January 26, 1939, when the notice was given, the situation would still not be sufficient to prevent relief to appellee by coming into court and filing this bill within thirty days after January 26, 1939.

Appellant contends that in the original bill, there is no election declared by appellee to buy the property except upon a condition not expressed in the contract: that is, upon delivery of an abstract showing good and merchantable title.

We assume appellant is referring to paragraph number 5 of the bill in which it is alleged that on January 27, 1939, notice with that condition was given to appellant. That allegation is merely expressing the terms of that notice. But in paragraph number 7 of the bill appellee makes the unqualified offer to exercise the option and to pay the said $1,200, and in all respects

to do equity. The condition named in the notice of January 27, 1939, is not here repeated. The bill with such unqualified offer filed within thirty days after the notice complies with the duty of appellee to exercise the option made more specific by a subsequent amendment striking out paragraph number 5.

The contention of appellant in this respect cannot therefore be sustained.

Appellee in his reply brief asks us to modify our opinion and judgment so as to relieve him of the payment of interest on the authority of Pearce v. Third Avenue Imp. Co., 221 Ala. 209, 128 So. 396. In that case the vendors remained in possession of the land pending the litigation and received rents. The interest on the purchase price aggregated many times the amount of rents so collected. The vendors by a noncompliance deprived the vendees of the opportunity to improve the property and enhance the rental value, and enjoy its possession. The court found that it would be equitable to charge the vendee with no more interest than the amount of rents collected by the vendor, and therefore charged neither interest nor rents.

In the instant case the lot was vacant as purchased, with a stipulation for $25 as rent for the year which was paid in advance, and the vendee let into possession. Paragraph numbered 5 stipulated that if the (vendee) appellee should desire to become the purchaser of the property, he "will not be required to make any refund of the rent paid." When he filed his bill, failing to bring into court the purchase money, he was already in possession, and he thereby established himself as the purchaser in possession whose rights were thereby fixed though not then decreed. He could, and possibly did, improve the property at once as he saw fit; his right as tenant ended and began as the owner in possession, and the right of appellants was then and there complete to the $1,200 offered to be paid but not by a tender kept good. And by a later amendment he sought to reduce the amount of it by the value of an easement to which we have referred. Appellee thereby put in issue the true amount due to be paid, and this issue is decided against him, fixing the stipulated sum as due to be paid as of the date of filing the bill. This was not then paid nor brought into court. He is not therefore in position to be relieved of interest, and since pending the litigation he has had possession with complete right of enjoyment as the purchaser after this bill was filed, his status is not on the same equitable basis as existed in Pearce v. Third Ave. Imp. Co., supra.

Application for rehearing denied.

All the Justices concur.