HENRY C. JORDAN v. ANDREW R. JACKSON.*

FILED FEBRUARY 22, 1906. No. 14,149.

1. **Review: RECORD.** Affidavits used on the hearing of a motion to set aside a default, if not preserved in the bill of exceptions, will not be considered in this court.

2. **Specific Performance: PLEADING.** Amendment to a cross-petition examined, and *held* not to constitute a departure, and the cross-petition, as thus amended, examined, and *held* sufficient to support a decree for specific performance.

3. ———: FINDINGS. In such case a general finding in favor of the cross-petitioner will sustain a decree for specific performance.

4. **Married Women: CONVEYANCES.** Where a married woman owns

*See opinion on motion for rehearing, p. 26, *post.*

real estate in her own right, except when such real estate is a homestead, in order to convey a good title it is not necessary that her husband should join in the conveyance.

5. **Evidence** examined, and *held* sufficient to sustain the findings and decree.

ERROR to the district court for Dakota county: GUY T. GRAVES, JUDGE. *Affirmed.*

*W. E. Gantt,* for plaintiff in error.

*J. C. Mabry* and *William P. Warner, contra.*

ALBERT, C.

On the 28th day of August, 1902, the plaintiff and the defendant entered into a contract in writing, whereby the defendant agreed to sell and convey to the plaintiff 840 acres of land in this state for $36,120. The purchase price was to be paid as follows: $2,500 when the contract was executed, $2,500 on February 1, 1903, $5,000 March 1, 1903. The remainder to be evidenced by two notes to be executed March 1, 1903, secured by second mortgage on the land, one for $16,000, and the other for $10,120, both payable March 1, 1908. The contract further provides that upon receipt of the cash payments above mentioned and the execution of the notes and mortgage for the deferred payments, the defendant shall execute a warranty deed to the plaintiff. After the contract was prepared and signed, the plaintiff paid the defendant $1,000 of the $2,500 cash payment, and the contract was left in a bank in Sioux City. The understanding upon which it was left there is one of the matters in dispute, and will be referred to hereafter. Shortly afterwards the plaintiff expressed himself as dissatisfied with the abstract furnished by the defendant, claiming that the defendant's title appeared to be defective. The defects urged at that time are discussed in the body of the opinion. Afterwards, in the month of September, the plaintiff wrote the defendant notifying

him of his demand for the return of the $1,000, and that the abstract did not show good title. Failing to procure a return of the $1,000, on the 14th day of October, 1902, the plaintiff brought this action.

It is alleged in the petition that on or about the 28th day of August, 1902, the plaintiff and the defendant made an agreement, whereby it was mutually agreed between them that the plaintiff should buy from the defendant, and the defendant should sell to the plaintiff, the lands herein-before mentioned, at the price already stated; that after making a verbal agreement and agreeing upon the terms and conditions, it was then further agreed by and between the parties that the agreement should be reduced to writing, signed by the parties and placed in escrow in a certain bank in Sioux City, Iowa, there to remain until the defendant should furnish the plaintiff abstracts of title to the land showing perfect title to the same in the defendant, and that plaintiff was then to have ten days in which to examine the abstracts, and if, upon such examination, they were satisfactory to him that the sale was to be completed in accordance with the terms of the agreement in escrow. A copy of the agreement reduced to writing is set out at length in the petition. It is further alleged that said written agreement was deposited in said bank, and at the same time the plaintiff also deposited in escrow his check for the sum of $1,000, payable to the defendant, which at said time was by the defendant indorsed to the bank, and that the money thereon has been collected by the bank, and that the funds so collected remain in escrow in place of the check; that on or about the first day of September, 1902, the defendant furnished abstracts to the land, and that on or about the 5th day of the same month the plaintiff notified the defendant that the abstracts were not satisfactory, and that they did not show that the defendant had good and sufficient title to the land; that he then notified the defendant that he would not accept said title or proceed further in carrying out the agreed contract of sale, and demanded of defendant, and of the said

bank, the return of the said $1,000 so as aforesaid left in escrow, and the cancelation of the said agreement; that the defendant refused and still refuses to cancel the agreement and have said money returned to the plaintiff. The petition also contains a general allegation that the plaintiff has performed all the conditions of said agreement on his part, but that the defendant has failed as aforesaid to perform his part thereof. The damages are laid at $1,300. The petition contains a second cause of action, but it need not be noticed at this time.

On the 23d day of February, 1903, the defendant having failed to answer, a default was entered against him, although his attorney at the time appeared and tendered an answer. On the same day the defendant presented a motion to set aside the default. It was supported by affidavits and accompanied by an answer setting up a meritorious defense. The motion was allowed and leave given to answer.

The answer is of unusual and unnecessary length. It admits the execution of the written contract set out in the petition, that it was deposited in a Sioux City bank, but denies specifically that it was placed there in escrow for the reasons and for the purpose alleged by the plaintiff, and avers that it was left there for the reason that the plaintiff was unable at that time to pay more than $1,000 of the cash payment required by the contract, and required ten days to pay the remaining $1,500, and that the contract was deposited in said bank with the understanding that it would be delivered to the plaintiff when he had paid the remaining $1,500, which was to be paid within ten days from the execution of the contract. The answer also denies that the plaintiff deposited his check in said bank in escrow, but alleges that the check was given in part payment of the cash payment mentioned in the contract. It denies that defendant's title to the land was defective, and alleged affirmatively that his title thereto is clear and perfect, with the exception of certain mortgage liens, which the defendant was to pay out of the money re-

ceived from the plaintiff on the purchase price. The answer contains a general denial of all allegations not admitted or qualified. The answer also contains what is denominated a counterclaim, but it will not be necessary to notice it at this time.

A cross-petition was filed with the answer, which it will be necessary to notice at length. It is as follows:

"Against the plaintiff the defendant alleges: (1) The making of said written contract, a copy of which is set out in the petition, which was entered into by the plaintiff and defendant on the 23d day of August, 1902; the defendant further alleges that he performed all that said contract requires of him up to the present time, and that he will perform all that it required by said contract hereafter, and that on or before March 1, 1903, he will make and tender to the plaintiff a good and sufficient warranty deed to all the property described in said contract, with a clear and perfect title thereto, which is all that can be required of the defendant by the terms of said contract. (2) He further alleges that all that plaintiff had done on his part by way of performance of said contract is the payment to the defendant of the sum of $1,000 which was paid at the time of signing said contract, that there remains now due and payable on said contract the further sum of $4,000 which the plaintiff refuses to pay; that he declares his intention not to further perform his part of said contract, and continues to disregard and repudiate its terms; that there will be due upon said contract the further sum of $5,000 March 1, 1903, and at the time the plaintiff is required by the terms of said contract to execute and deliver to the defendant his two promissory notes, one for $16,000, with interest at 5 per cent. payable semiannually, and the other for $10,120, with interest at $5\frac{1}{2}$ per cent. per annum, both due March 1, 1903, and to execute mortgages upon the real estate sold to him to secure the payment of said notes, all of which the plaintiff declares he will refuse to do, and asserts his intention to repudiate said contract. Wherefore, the defendant prays

the court for a decree against the plaintiff requiring him to specifically perform said contract in all its terms and conditions, and to pay said sums of money now due upon said contract, and to pay the sum of money to become due March 1, 1903, and to execute said notes and mortgages in compliance with the terms of said contract, and, he prays the court for such other and further relief against the plaintiff as shall secure the performance of said contract, and, if the plaintiff fails and refuses to perform said contract within 30 days from the signing of the decree requiring him so to do, that then the court shall render judgment against the plaintiff for the full amount unpaid upon said contract, to wit, $35,120, together with interest at 7 per cent. thereon, and costs of suit."

The reply is a general denial. Afterwards the defendant filed the following amendment to his cross-petition: "Comes now the defendant and, leave of court being first obtained, files the following amendment to his answer and counterclaim: (1) He alleges that on March 1, 1903, and at all times he was, and has been, and is now ready and willing in all particulars to perform said contract on his part, but alleges that he did not on March 1, 1903, or at any other time, make and tender to the plaintiff a deed as provided in said contract, for the reason that prior to that time the plaintiff repudiated his said contract and refused to perform its terms or make any further payments on the purchase price of said land as required by the terms of said contract, and the defendant avers that he was able, willing and ready on said 1st day of March, 1903, to make a clear and perfect title to the plaintiff for all of said land, and to make and deliver to the plaintiff a good and sufficient warranty deed therefor, and would have done so, except for the plaintiff's persistent refusal to perform said contract on his part and his avowed purpose to repudiate the same. The defendant alleges that he is still willing and ready to perform his contract, and convey to plaintiff a clear and perfect title to all of said real estate, as soon as the plaintiff makes the payments

of the purchase price as required by the terms of said contract. Wherefore, in addition to the prayer of his original and cross-petition, the defendant prays the court for the additional relief, if the plaintiff fails to specifically perform his said contract within a time fixed by the court's decree, then the defendant be given judgment against the plaintiff for the full amount of the balance due on the purchase price of said land, and that all plaintiff's rights, title and interest in said lands, and all his equities therein, be foreclosed and forever barred, and that such judgment be established as a lien upon said land as in proceedings to foreclose a mortgage, and that special execution issue for the sale of all the plaintiff's rights, interests and equities in all said real estate, for the satisfaction of such judgment, interest and costs, so far as the same will extend, and that he have judgment for any deficiency, and general execution to satisfy any unpaid balance that remains due after the sale of said property, and for all other orders and relief as justice and equity require in the premises."

A trial was had to the court without a jury which resulted in a finding for the defendant and a decree for specific performance. The plaintiff brings the case here on error.

The first assignment of error is that the court erred in setting aside the default. The motion to set aside the default was accompanied by an answer setting up a meritorious defense, and appears to have been supported by affidavits. The affidavits are not preserved by bill of exceptions, and for that reason cannot be considered at this time. This is a rule that is reiterated at almost every sitting of the court. *Mercantile Trust Co. v. O'Hanlon,* 58 Neb. 482; *Reid, Murdock & Co. v. Panska,* 56 Neb. 195, and cases cited. Every presumption is in favor of the correctness of the order of the district court, and, in the absence of evidence showing that its discretion was abused, the presumption that it was properly exercised in this instance will prevail. The plaintiff, however, insists that it was in-

cumbent upon the defendant to preserve the evidence on this motion. We know of no rule of practice that requires a party to preserve the evidence for the use of his adversary.

The next contention of the plaintiff is that the court erred in permitting the defendant to file an amended petition. This contention is based on two grounds: (1) That the facts set out in the amendment existed at the time the original answer was filed: (2) that the amendment presents another and different cause of action than that set up in the original cross-petition. The first objection could be urged against almost any amendment offered to a pleading, because, ordinarily, an amended as distinguished from a supplemental pleading is based on facts which existed when the original pleading was filed. Consequently, to sustain that objection would be, practically, to deny the right to amend. As to the second, it cannot be fairly said that the amendment presents another and different cause of action than that set up in the original answer and cross-petition, because the identity of the cause is clearly preserved and the relief asked is substantially the same. It is possible that it did present issues which would have to be supported, and which the plaintiff would have to meet, by different testimony than that required by the issues tendered in the original cross-petition, and it is possible that the plaintiff would have been entitled to a continuance on that ground, had he asked it, but it does not seem that he applied for a continuance, at least he does not complain of a refusal of a request for a continuance. There seems to be no merit in the contention that the court erred in permitting the amendment.

The decree is next assailed on the ground that it is not supported by the cross-petition and the amendment thereto. We have set out the pleadings in substance and we are satisfied that they are amply sufficient to sustain the decree. In this connection we might notice another assignment of error, which is based on the denial of a motion made by the plaintiff to strike certain portions of the prayer to plaintiff's amendment to the cross-petition. The prayer

is no part of the pleading, tenders no issue, and neither adds to nor takes from the evidence required of either party. We are unable to perceive how the denial of this motion could in any way prejudice the plaintiff.

Another assignment, argued at some length, is that the decree is not supported by the findings, in that the court did not find that the defendant had performed his part of the contract, or any fact that would excuse such performance. The answer to this is that at the close of specific findings in favor of the defendant is a general finding in favor of the defendant which, if it stood alone, is sufficiently broad to support a decree in his favor.

A further contention of the plaintiff is that the findings of the court necessary to support the decree are not sustained by sufficient evidence. He insists that it is established by the evidence that after the contract was drawn up and signed it was left in the bank at Sioux City, with the understanding that it was not to become effective until the defendant had procured abstracts showing clear title to the property in question, and satisfactory to the plaintiff. The testimony of the plaintiff is to that effect, but he is flatly contradicted by the defendant. The defendant's version of the transaction is that after the contract was made and signed it was found that the plaintiff was unable to pay the full amount of the first payment, the receipt of which was acknowledged in the contract, but could only pay $1,000, and asked a week or ten days to pay the remaining $1,500. This was agreed to, whereupon the plaintiff paid $1,000, and his copy of the contract was left in the bank at Sioux City, with instructions to the effect that upon the payment of the remaining $1,500 it was to be delivered to him. The objection to delivering it to him at the time being that on its face it showed the receipt by the defendant of the full amount of the first payment. The defendant's story is corroborated by the cashier of the bank, as well as by many facts and circumstances appearing in evidence, and we think the evidence upon this branch of the case clearly preponderates in his favor.

But the plaintiff contends that the evidence shows that the title which the defendant proposed to convey was defective, and, consequently, a decree for specific performance in favor of the defendant is inequitable and erroneous. We are unable to concur in this view. The defects upon which the plaintiff relies in support of this contention are: (1) An omission in a deed forming part of the chain of title to state whether the grantor therein, a woman, was married or single; (2) another deed forming a link in the chain of title purports to have been given by certain parties described in the deed as widow and only heirs of one in whose name the title stood of record at the date of the conveyance; (3) a mortgage lien on the land, or a part of it, for $8,500 in favor of Connecticut Mutual Life Insurance Company; (4) a trust deed to secure the payment of $400 annually to defendant's mother during her lifetime, constituting a lien on the land. As to the first it appears to be frivolous. We are unable to see how it is material, on the question of the title to this land, whether she was married or single when she executed the deed. It is not claimed that any portion of it constituted a family homestead. If she were single, and otherwise competent, there can be no question as to her right to convey. If married, she could convey in the same manner and with like effect as if she were single. Comp. St. 1905, ch. 73, sec. 42. Her husband's contingent right as tenant by curtesy stands on a different footing than that of the wife's inchoate right of dower. The surviving wife takes dower in all lands whereof the husband was seized at any time during the marriage, unless lawfully barred (Comp. St. 1905, ch. 23, sec. 1), whereas the husband's right of curtesy extends only to lands whereof his wife was seized in her own right at the time of her death. In other words, while the wife, if a resident of the state, must join the husband in a conveyance, or execute a separate conveyance, in order to cut off her right of dower; by her own conveyance and without the concurrence of her husband she may convey good title to the lands owned by her, unless the property be a homestead.

As to the second defect, it is not claimed that the grantors named in the deed did not stand in the relation there stated to the party who had died seized of the land, but merely that it does not thus appear on the paper title. So far as the abstract itself is concerned, it shows how the grantors were described in the deed, by recital which would be of as much weight, at least, as the recital omitted from the other deed, namely, whether the grantor was married or unmarried, upon which plaintiff places so much stress. Aside from the recital in the deed, two affidavits were produced from parties having knowledge of the facts which show that one of the grantors was the surviving wife of said decedent, that he had died intestate, and that the other grantors are his only children, save a posthumous child, which died when less than two years old. The proof by affidavit is of the character usually required to cure such defects, and we think was amply sufficient to satisfy any reasonable person.

As to the two mortgages, it sufficiently appears that the plaintiff was apprised of them when the negotiations leading up to the contract were in progress, and that it was understood between the parties that the one to defendant's mother should be released on or before March 1, 1903, and the other paid off and discharged out of the payments then and previously made by the plaintiff on the purchase price of the land. The first was in fact released in September, 1902, about two weeks from the date of the contract. As to the other mortgage, as it was to be satisfied out of the payments which the plaintiff was to make, so long as he is in default on such payments he is in no position to complain that it has not been satisfied, especially so long as the balance which would still remain unpaid on the purchase price is largely in excess of the lien of the mortgage.

The abstract furnished is in evidence; it was passed upon and approved by plaintiff's attorney, except as to the mortgage of the insurance company, and, subject to that exception, which as we have seen is not available to the

plaintiff at this time, shows a good and merchantable title in the defendant.   The objections to it appear to be captious, and, judging from the entire record, seem to have been raised rather because the plaintiff desired to escape from the contract than because of any fear that the title he had agreed to purchase was not good.

Many assignments are based on the reception of evidence which the plaintiff insists was incompetent.   But it is well settled that the reception of incompetent evidence, in a trial to a court without a jury, is not reversible error, when there is sufficient competent evidence to sustain the findings.   Little, if any, incompetent evidence was received in this case, and the competent evidence is ample to sustain the findings and decree.   For these reasons, it is unnecessary to go into this assignment with greater particularity.

It is recommended that the decree of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed June 8, 1906.   *Former judgment vacated and judgment of district court reversed.   Motion for rehearing overruled:*

JACKSON, C.

For the first time our attention is called to the fact that the defendant has at all times retained possession of the land covered by the contract, which he now seeks to have specifically enforced.   It is now insisted that an account should have been taken of the rents and profits, and the amount credited to the plaintiff on the payments required to be made by him.   By the terms of the contract and the

decree the deferred payments draw interest, and it would seem to be inequitable that the defendant should be allowed interest and at the same time enjoy the rents and profits of the real estate. *Craig v. Greenwood,* 24 Neb. 557. It does not appear, however, that this matter was brought to the attention of the trial court, nor has counsel pointed out any basis in the record for a computation of the rents and profits. But as the decree itself is in form defective, in that it provides only for performance on the part of the plaintiff and not on the part of the defendant, we think the ends of justice would be served by vacating the decree of the district court and remanding the cause; with directions to permit the plaintiff to file a supplemental bill for an account of rents and profits and to deduct the amount thereof from the payments required of the plaintiff, and to enter a decree for specific performance on the part of both the plaintiff and the defendant.

It is therefore recommended that the former judgment of this court and the decree of the district court be vacated, and the cause remanded, with directions to permit the plaintiff to file a supplemental bill for an account of the rents and profits to be credited on the payment to be made by the plaintiff, and to enter a decree accordingly for specific performance on the part of both the plaintiff and the defendant.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court and the decree of the district court are vacated, and the cause remanded, with directions to permit the plaintiff to file a supplemental bill for an account of the rents and profits to be credited on the payment to be made by the plaintiff, and to enter a decree accordingly for specific performance on the part of both the plaintiff and the defendant, and the motion for rehearing is overruled.

JUDGMENT ACCORDINGLY.